## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TYRONE A. JACKSON**                                    **CIVIL ACTION**

**versus**                                                       **NO. 11-1771**

**N. BURL CAIN**                                             **SECTION: "J" (3)**

## REPORT AND RECOMMENDATION

       This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

       Petitioner, Tyrone A. Jackson, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On May 22, 2004, he was convicted of second degree murder

under Louisiana law.[1]  On November 10, 2004, he was sentenced to a term of life imprisonment

without benefit of parole, probation, or suspension of sentence.[2]  On June 26, 2007, the Louisiana

Fifth Circuit Court of Appeal affirmed that conviction and sentence.[3]  The Louisiana Supreme Court

then denied petitioner's related writ application on January 25, 2008.[4]

On or about January 7, 2009, petitioner filed an application for post-conviction relief

with the state district court.[5]  That application was denied on March 20, 2009.[6]  His related writ

applications were likewise denied by the Louisiana Fifth Circuit Court of Appeal on April 16, 2010,[7]

and by the Louisiana Supreme Court on May 20, 2011.[8]

On or about June 23, 2011, petitioner filed the instant federal *habeas corpus*

application.[9]  In its response, the state concedes that the application is timely but argues that

---

[1] State Rec., Vol. XII of XIII, transcript of May 22, 2004, p. 256; State Rec., Vol. IV of XIII, minute entry dated May 22, 2004; State Rec., Vol. VIII of XIII, jury verdict form.

[2] State Rec., Vol. XII of XIII, transcript of November 10, 2004; State Rec., Vol. V of XIII, minute entry dated November 10, 2004.

[3] State v. Jackson, 963 So.2d 432 (La. App. 5th Cir. 2007) (No. 07-KA-84); State Rec., Vol. III of XIII.

[4] State v. Jackson, 973 So.2d 754 (La. 2008) (No. 2007-KO-1666); State Rec., Vol. III of XIII.

[5] State Rec., Vol. VI of XIII.

[6] State Rec., Vol. VI of XIII, Order dated March 20, 2009.

[7] State *ex rel.* Jackson v. State, No. 09-WR-582 (La. App. 5th Cir. Apr. 16, 2010); State Rec., Vol. VII of XIII.

[8] State *ex rel.* Jackson v. State, 63 So.3d 975 (La. 2011) (No. 2010-KH-1175); State Rec., Vol. XIII of XIII.

[9] Rec. Doc. 1.

petitioner failed to exhaust his remedies in state court with respect to two of his claims.[10]  However, a federal court has the authority to deny *habeas* claims on the merits, regardless of whether petitioner exhausted state court remedies and whether exhaustion is waived by the state.  28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civil Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008).  In that petitioner's claims are clearly meritless, the undersigned recommends that they simply be dismissed on that basis in the interest of judicial economy.

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

_____

[10] Rec. Doc. 14, pp. 9-11.

determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways.  First, a state-court decision involves an unreasonable application of this

– 4 –

> Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the
> facts of the particular state prisoner's case.  Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not
> apply or unreasonably refuses to extend that principle to a new
> context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).   The Supreme Court has noted that the focus of this

inquiry "is on whether the state court's application of clearly established federal law is objectively

unreasonable, and we stressed in Williams that an unreasonable application is different from an

incorrect one."   Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011)

("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application

of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."),

cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's
> contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was
> meant to be.  As amended by AEDPA, § 2254(d) stops short of
> imposing a complete bar on federal court relitigation of claims
> already rejected in state proceedings.  It preserves authority to issue
> the writ in cases where there is *no possibility* fairminded jurists could
> disagree that the state court's decision conflicts with this Court's
> precedents.  It goes no farther.  Section 2254(d) reflects the view that
> habeas corpus is a guard against *extreme malfunctions* in the state
> criminal justice systems, *not a substitute for ordinary error
> correction through appeal.  As a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the state
> court's ruling on the claim being presented in federal court was so
> lacking in justification that there was an error well understood and*

– 5 –

> comprehended in existing law beyond any possibility for fairminded
> disagreement.

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

## II. Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

of this case as follows:

> The following was adduced at trial.  On August 31, 2001, at
> approximately 9:00 p.m., Jefferson Parish police officers responding
> to a call regarding a shooting in the 4200 block of Yates Street, found
> the deceased victim, Rance Brown, lying on his back with wounds to
> his upper torso area.  It was determined that the manner of death was
> homicide and the cause of death was a shotgun wound to the chest
> with fragmenting injuries of the left lung and aorta.  There was also
> a shotgun wound to the neck.
>
> JPSO detectives arrived at the crime scene, interviewed
> witnesses, and collected evidence.  During the investigation, the
> detectives learned that, on the morning of August 31, 2001, someone
> broke into defendant's Cadillac and stole his radio.  When defendant
> and another tenant, Kelly Taylor, spoke to Brian Robinson and his
> girlfriend, Michelle Dickerson, tenants in the apartment complex,
> they told defendant that Brown had broken into their apartment and,
> therefore, Brown may have broken into defendant's Cadillac.[FN1]
> Defendant went to Brown's apartment several times during that day
> and knocked on the door, but no one answered.
>
> > [FN1] At trial Det. Clogher testified that Kerry Shy,
> > a resident of the apartment complex, confessed to
> > burglarizing defendant's Cadillac earlier that day.
>
> At approximately 8:00 p.m., Dickerson and (Brian) Robinson
> moved out of their apartment because it had been burglarized twice.
> As their friend, Carlos Paz, was driving them out of the parking lot,
> the three of them saw Brown's vehicle coming into the lot.  Paz
> specifically saw Brown driving the vehicle. Shortly thereafter Brown
> made a 911 call from the apartment of Reginald Robinson to report
> a burglary of his apartment.  When the police called back to verify

the information, (Reginald) Robinson informed them that Brown was dead.

JPSO Det. Donald Clogher subsequently spoke to (Reginald) Robinson who stated that he saw the shooting. When Det. Clogher showed (Reginald) Robinson a photographic lineup, Robinson positively identified defendant as the shooter. At trial, (Reginald) Robinson recanted his statement and testified that he could not see who shot the victim because it was dark. Robinson explained that he was a paranoid schizophrenic, and that he had been drinking that night. He testified that the victim used his telephone that night, and that the victim told him afterwards he was going to throw his garbage away. He further testified that he heard a gunshot and saw someone running, and that he next saw the victim lying downstairs on the ground.

Another resident of the apartment complex, Kelly Taylor, gave two statements to detectives. In her second statement taken on September 6, 2001 at 2:25 a.m., Taylor said that on the afternoon of August 31, 2001, she overheard (Brian) Robinson tell defendant that Brown broke into defendant's car. She also overheard defendant say that he was going to "get him." Taylor left the apartment complex to run an errand but returned at approximately 5:00 p.m. When she saw defendant, he told her that he was going to kill Brown. Taylor said that she then went into her apartment but came back outside. When she did so, she saw defendant with his shirt open and a cutoff shotgun tucked into his shorts. Afterwards, Taylor stated that defendant cut around the alleyway of the building, and she went back into the apartment. Det. Donald Meunier and Det. Clogher testified that they did not force Taylor to give a statement or threaten her or tell her what to say.

Defendant was arrested and, after waiving his rights, he gave four statements. In his first two statements, taken on September 6, 2001 at 8:55 p.m. and 10:38 p.m., respectively, defendant denied involvement in the murder. However, in his third statement taken on September 7, 2001 at 5:36 a.m., defendant admitted to accidentally shooting the victim one time with a shotgun. When defendant was advised that the victim had been shot twice, defendant admitted in his fourth statement, taken on September 7, 2001 at 6:17 a.m., that the shotgun went off twice. Det. Meunier and Det. Clogher testified that defendant was not beaten, forced, or coerced into giving a statement, nor was he told what to say.

After defendant gave his fourth statement, he agreed to assist the detectives in locating the murder weapon. Det. Clogher testified

– 7 –

that defendant provided several false locations, but that he ultimately led them to an abandoned vehicle parked outside of 1365 Elm Street where his girlfriend, Dana Smith, rented a house.  When the detectives could not locate any weapons in that vehicle, defendant told them to call Smith and ask her what happened to them.  Det. Clogher contacted Smith who came to the scene and agreed to accompany the detectives to the bureau, where she was advised of her rights and gave two statements.

In her first statement taken on September 7, 2001 at 10:41 a.m., Smith told the detectives that she and defendant's father, Tyrone Jackson, Sr., went for a ride on I-10 after the shooting, and that at some point, Jackson pulled the car over, got out, popped the trunk, retrieved a big gun out of the trunk, and threw it over the I-10 before the Hammond exit while she sat in the car.  When Jackson returned to the car he said that he thought that was one of the guns defendant had used.  Jackson indicated to Smith that he threw more than one gun over, but she only saw one.  She stated that Jackson then said, "no murder weapon, no trace," but she denied that one of the weapons was a shotgun.  Smith also said that defendant's father told her that defendant had told him he shot Brown.

Smith explained in her first statement that, before the shooting, she was inside her apartment cleaning when defendant walked in and went to the children's bedroom.  Afterwards, defendant left the apartment.  Smith then looked out the children's bedroom window and saw Brown's car, so she immediately ran downstairs looking for defendant because everybody had told him that Brown had broken into his car.  As she did so, she heard the shots, ran back in the house, grabbed her baby, and left.  Smith remembered that defendant took the clothes basket out of the bathroom and then dropped it by the door when he went out.

In her second statement taken on September 7, 2001 at 1:18 p.m., Smith said that her first statement was not completely true.  Smith admitted that she stepped out of the car and looked into the water as the guns were being thrown.  She said that Jackson threw an "AK", a shotgun, a small handgun, and a black device into the water.[FN2]  She stated that, after she looked out the children's window, she told defendant's friend, Kevin, who was visiting, that defendant was about to get in trouble and that she was going to try and stop him.  She then ran downstairs and heard two shots.

> [FN2] Det. Clogher testified that a dive team went out
> but could not locate the weapons.

Afterward, she saw defendant go upstairs with the clothes basket in his hands.  When she got to the door, defendant and Kevin left.  She went into the house and looked out the window and saw Brown's body lying there.  Smith said that she had seen the shotgun before on Elm Street and at the apartment a few days before the shooting.  Smith indicated in her second statement that defendant kept the shotgun at the top of their bedroom closet and sometimes in a blue bag on top of the dresser.  Smith stated that she also saw the shotgun at her house on Elm Street on the floor of the back seat in an abandoned gray car in the driveway, along with the "AK" and another gun.  Det. Meunier testified that he did not threaten or coerce Smith into giving a statement.

Louise Walzer, assistant director of the JPSO crime lab and senior firearms examiner, was qualified as an expert in the field of firearms identification.   Walzer examined the projectiles in connection with this case and determined that they came from a .12 gauge shotgun.  She testified that a pump shotgun could accidentally fire once, but not twice, and that the purpose of a sawed off shotgun was concealment.

Both Kelly Taylor and Dana Smith were called as witness by the defense and both averred that the detectives threatened and coerced her into giving a statement that was untrue.

Tyrone Jackson, Sr., defendant's father, testified that he had a Winchester rifle and a Smith and Wesson .38 pistol in his house for protection, but that he decided to dispose of them after defendant was arrested.  He explained that defendant was on probation, and that if the police were to come to his house and see those guns, defendant would have to go back to jail.  Jackson became concerned that the police would search his house after Smith told him that the police had ransacked her apartment.  He admitted that he and Smith went for a ride and that he disposed of those weapons between Loyola and Laplace.  He denied throwing a sawed off shotgun into the water.

Defendant testified on his own behalf at trial and denied shooting Brown.  He testified that, on the day in question, he and Smith saw (Brian) Robinson who told him that he thought Brown had broken into his (Brian's) apartment.  Defendant knocked on Brown's door a couple of times to ask about his radio but no one answered.  Defendant contended that at 9:00 p.m., he was at his apartment with Seals and Smith.  He asserted that he went downstairs with a basket to wash some clothes, and that he was in the laundry room when he heard the gunshots.  Afterwards, defendant indicated that he went

upstairs, asked Seals if he heard the shots, and then said, "let's get out of here."  Defendant testified that before they left, he looked out of his apartment window and saw someone lying on the ground and someone standing around the body.

Defendant testified that the detectives threatened and coerced him into confessing.  He contended that the detectives did not allow him to eat, drink, or sleep during the lengthy interrogation.  He claimed that the detectives forced him to say that he accidentally shot Brown.  He also claimed that the detectives beat him; however, he answered "no" on the booking form when he was asked if he was injured or hurt.

After the defense rested, the state called JPSO Lt. Kenny Kline of the internal affairs division in rebuttal.  Lt. Kline testified that he never received a complaint from Taylor, Smith, or defendant.

JPSO Lt. Gray Thurman, the supervising detective, testified in rebuttal that he was in the observation room at times during the interviews of Taylor and defendant, and that they were not threatened, beaten, or coerced, and that they were not denied food or a break.[11]

### III.  Petitioner's Claims

### A.  Suppression Hearing

As his first claim, petitioner contends:  "The trial court abused its discretion in refusing to keep the hearing on the motion to suppress open for additional testimony, since the defense had the burden of proof and none of the witnesses that the defense had subpoenaed were present for the hearing."[12]  On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected that claim, holding:

---

[11] State v. Jackson, 963 So.2d 432, 434-37 (La. App. 5th Cir. 2007) (No. 07-KA-84); State Rec., Vol. III of XIII.

[12] Rec. Doc. 1, pp. 3 and 17.

The record reflects that on August 26, 2002, a hearing was held on defendant's motion to suppress identifications and statements.  Prior to the hearing, defense counsel said that he sent subpoenas to many witnesses who allegedly made photographic identifications, including Michelle Dickerson, Thomas Berryhill, Steven Fickes, Reginald Robinson, and others.  Defense counsel stated that almost all of these people sought had addresses in the apartment complex, and that he did not think that any of these people were still there, because he already went out there.  The clerk responded that the subpoenas went out, but there were no returns.  Defense counsel then stated that he was ready to proceed with "what we have in the case."

During the hearing, the state called Det. Clogher as a witness on the motion to suppress the five identifications.  Det. Clogher testified that he showed a photographic lineup to Michelle Dickerson, Rena Sherrill, Steve Fickes, Reginald Robinson, and Thomas Berryhill, and that they positively identified defendant.  He did not suggest that they identify defendant, nor did he coerce them into identifying defendant.  Det. Clogher further testified that he showed a photographic lineup to Brian Robinson and Craig Legendre, but they were unable to identify anyone.

Defense counsel then requested that the hearing be held open until he located these persons, because he needed "all these witnesses to come in."  Counsel stated that he subpoenaed them and tried to locate them, but none of them were living on Yates Street anymore.  In response, the State noted that the hearing had been continued on numerous occasions, and that defense counsel had ample opportunity to subpoena and bring in witnesses.  After hearing arguments of counsel, the trial judge denied the motion (to keep the hearing open).  The trial judge then denied the motion to suppress the five identifications.

Both the Sixth Amendment of the United States Constitution and Article I, Section 16 of the Louisiana Constitution (1974) guarantee a criminal defendant the right to compulsory process and to present a defense.  A defendant's right to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served.  State v. Gordon, 01-734 (La.App. 5 Cir. 11/27/01), 803 So.2d 131, 148, writs denied, 2002–0362 (La. 12/19/02), 833 So.2d 336 and 2002-0209 (La. 2/14/03), 836 So.2d 134.

LSA-C.Cr.P. art. 708 defines continuance and recess as follows:

A continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the trial or hearing has commenced. A recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced.

Pursuant to LSA-C.Cr.P. art. 709, a defendant must state the following in order to be entitled to a continuance for securing the presence of a witness:

(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;

2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and

(3) Facts showing due diligence used in an effort to procure attendance of the witness.

A motion for recess is evaluated by the same standards as a motion for a continuance. State v. Warren, 437 So.2d 836, 838 (La. 1983); State v. Rodriguez, 02-334 (La.App. 5 Cir. 1/14/03), 839 So.2d 106, writ denied 03-0482 (La. 5/30/03), 845 So.2d 1061. The decision to grant a recess lies within the discretion of the trial court and will not be overturned absent an abuse of that discretion. State v. Hampton, 98-0331 (La. 4/23/99), 750 So.2d 867, 877, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999); State v. Stevenson, 02-0079 (La.App. 5 Cir. 4/30/02), 817 So.2d 343, 345.

In the instant case, the record shows that defendant did not satisfy the requirements of LSA-C.Cr.P. art. 709. Defendant failed to provide facts to which the absent witnesses were expected to testify. He only informed the court that he wanted the witnesses present for the hearing in order to test their veracity. He also failed to state facts and circumstances showing a probability that the witnesses would be available at the time to which the hearing was deferred. In fact, defendant told the trial court that the witnesses probably no longer lived at the addresses on the subpoenas. Additionally, defendant failed to use due diligence in an effort to

– 12 –

procure the attendance of the witnesses.  The record reflects that defense counsel represented defendant as of May 30, 2002 and, therefore, he had approximately three months to locate and subpoena the witnesses.  However, defense counsel waited very late (five days before the hearing) to request that subpoenas be issued to the witnesses.

Furthermore, at the beginning of the hearing, defense counsel told the trial judge that he was ready to proceed even though his witnesses were not present.  Finally, defendant has failed to show that he was prejudiced by the failure of the witnesses to testify.  The record reflects that defense counsel had the opportunity to and did thoroughly cross-examine Det. Clogher at the suppression hearing.

We find that the trial court did not abuse its discretion in denying defendant's motion for a recess to secure the presence of five witnesses.[13]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[14]

The United States Fifth Circuit Court of Appeals has explained:

A motion for continuance is addressed to the sound discretion of the trial court and will not be disturbed on a direct appeal unless there is a showing that there has been an abuse of that discretion. United States v. Uptain, 531 F.2d 1281 (5th Cir. 1976); United States v. Gidley, 527 F.2d 1345 (5th Cir. 1976), cert. denied, 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1977).  When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process.  See Gandy v. Alabama, 569 F.2d 1318, 1323 (5th Cir. 1978); Shirley v. North Carolina, 528 F.2d 819, 822 (4th Cir. 1975).

The Supreme Court addressed this subject in Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964):

---

[13] Jackson, 963 So.2d at 437-39; State Rec., Vol. III of XIII.

[14] State v. Jackson, 973 So.2d 754 (La. 2008) (No. 2007-KO-1666); State Rec., Vol. III of XIII.

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. (Citations omitted.)

> When a motion for a continuance for the purpose of securing defense witnesses is denied, our cases have identified the following factors in considering whether denial of the motion was an abuse of the trial court's discretion:

>> the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.

> United States v. Uptain, 531 F.2d at 1287 (footnotes omitted).

Hicks v. Wainright, 633 F.2d 1146, 1148-49 (5th Cir. 1981).

In the instant case, it is clear that there was no abuse of discretion. As noted by the state court, defense counsel was hardly diligent in this respect, with subpoenas not being issued until shortly before the scheduled hearing. Moreover, even if the trial court had been otherwise inclined to grant a continuance, there was no indication that the presence of the individuals could be secured within a reasonable time; on the contrary, defense counsel conceded that he did not know their

– 14 –

whereabouts or how to contact them.  Further, in that counsel had not interviewed the individuals,

he could not even guess as to what they might say even if they could be located, much less know that

their testimony would be favorable to the defense in any way whatsoever.  In essence, defense

counsel was requesting an open-ended continuance to attempt to secure the presence of witnesses

whose whereabouts were unknown in order to obtain testimony which might not even be helpful to

the defense.  Clearly, the trial judge did not abuse his discretion denying a such a request.

Therefore, petitioner obviously cannot show that the state court's decision denying this claim "was

contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Accordingly,

under the deferential standards of review mandated by the AEDPA, this Court should likewise deny

the claim.

## B.  Improper Comments

Petitioner's second claim is that his ability to receive a fair trial was undermined by

the cumulative effect of the prosecutor's improper comments.  On direct appeal, the Louisiana Fifth

Circuit Court of Appeal rejected that claim, holding:

> In his second allegation of error, defendant argues that the
> prosecutor made improper comments that, when taken together,
> resulted in cumulative error that undermined his ability to receive a
> fair trial.  Defendant stated that he moved for a mistrial each time, but
> his motions were denied.
> Under LSA-C.Cr.P. art. 775, "[u]pon motion of a defendant,
> a mistrial shall be ordered, and in a jury case the jury dismissed when
> prejudicial conduct in or outside the courtroom makes it impossible
> for the defendant to obtain a fair trial, or when authorized by Article
> 770 or 771."
> LSA-C.Cr.P. art. 770 provides as follows:

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:

(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;

(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;

(3) The failure of the defendant to testify in his own defense; or

(4) The refusal of the judge to direct a verdict.

An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial.  If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.

LSA-C.Cr.P. art. 771 provides the law regarding admonitions:

In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:

(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or

(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.

In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial.  Whether a mistrial should be granted is within the sound discretion of the trial court and the denial of a motion for mistrial will not be disturbed absent an abuse of that discretion.  State v. Smith, 04-340 (La.App. 5 Cir. 10/26/04), 888 So.2d 280, 285.

Defendant's first motion for mistrial occurred when the prosecutor offered to take out a line in defendant's statement where he said that he had just come home from doing "four years flat." Defense counsel argued that the entire paragraph containing that line should be excised.  The trial judge agreed with the prosecutor that only the one line referring to defendant's prison time should be excised.  During direct examination, Det. Clogher testified that State's Exhibit 26A was the original audiotape cassette of defendant's second statement, and that State's Exhibit 26B was "the excised copy, a copy where a small portion was taken out.  It's an edited copy." Det. Clogher further testified that a small portion was taken out at the request of the district attorney's office.  The prosecutor subsequently asked the trial judge to inform the jury what they discussed at the bench, i.e., that the defense was moving to have a certain portion of the statement taken out.

Defense counsel approached the bench and moved for a mistrial, arguing that the prosecutor should not have told that information to the jury.  He contended that the prosecutor had directed the jury's attention to the fact that the statement was excised, and that they were now going to wonder what had been in there.  He further contended that this prejudiced defendant.  The prosecutor asked the trial judge to instruct the jury to disregard her comment, but defense counsel reiterated his motion for a mistrial.  The trial judge denied the motion, and told the jury that there was a small part of the

statement that needed to be taken out, that they were not to be concerned with that, and to disregard the attorneys' comments.

The prosecutor subsequently offered the statement into evidence noting that State's Exhibit 26B had been edited. Defense counsel again objected. The prosecutor responded that she was trying to clarify for the record that they were playing the edited tape and not the original tape. Defense counsel said that he was going to ask the trial judge to admonish the prosecutor if she said something like that again.

The remarks in question were not within the scope of LSA-C.Cr.P. art. 770 and, therefore, a mistrial was not mandatory. Defendant was only entitled to an admonition under LSA-C.Cr.P. art. 771. A review of the record shows that the trial judge properly admonished the jury to disregard the remarks after he was requested to do so by the state. As such, defendant was not prejudiced by the remarks. Furthermore, on cross-examination, defendant admitted saying in his statement that he had just come home from doing "four years flat." The record does not reflect that defense counsel objected to that testimony. Therefore, we find no abuse of the trial court's discretion in the denial of defendant's first mistrial motion.

Defendant's second motion for mistrial occurred during direct examination, when the prosecutor asked Det. Clogher whether the individual standing at counsel's table was the person who confessed to murdering Brown. Det. Clogher responded affirmatively, and the prosecutor tendered the witness for cross-examination. Defense counsel then objected to the form of the question, stating that he believed the crime defendant admitted to committing was a negligent homicide and not a murder. The prosecutor stated, "[n]egligent homicide with two shots, Judge?"

Defense counsel moved for a mistrial, and a bench conference was subsequently held. During that bench conference, the prosecutor argued that this was an issue that was going to be argued in closing by defense counsel. The trial court commented, "[y]ou're not supposed to say anything like that." The prosecutor responded that defense counsel made a motion, but then went further and said it was a negligent homicide. The prosecutor offered to rephrase the question. Defense counsel said that did not matter and he moved again for a mistrial. The trial judge denied defense counsel's motion.

After the bench conference was over, the prosecutor rephrased the question by asking Det. Clogher whether the person sitting at counsel's table was the same person who confessed to killing Brown. Det. Clogher responded affirmatively in a lengthy answer. Defense

counsel objected, stating that the witness' answer was non-responsive.  The prosecutor noted that the witness had already answered the question, and the trial judge said they were going to recess for lunch.    During defense counsel's subsequent cross-examination of Det. Clogher, the detective stated that "... certainly a pump shotgun cannot be accidentally discharged twice, you have to actually rack an extra round in."

The remarks made by the prosecutor were not within the scope of LSA-C.Cr.P. art. 770 and, therefore, a mistrial was not mandatory.  Defendant could have asked for an admonition to the jury to disregard the remarks under LSA-C.Cr.P. art. 771; however, he failed to do so.    Additionally, defense counsel himself subsequently elicited the same remarks regarding negligent homicide from Det. Clogher that he complains the prosecutor made to the court, namely, that the shooting could not be considered a negligent homicide because the victim was killed by two shots fired from a shotgun.  Accordingly, the trial court did not abuse its discretion in denying defendant's second mistrial motion.

Defendant's third motion for mistrial occurred when he was testified during direct examination that, after the shooting, he looked out of his apartment window and saw someone lying on the ground and "someone standing like around the body."    On cross-examination, the prosecutor questioned defendant as to why he did not provide that information to Det. Clogher when he gave his statement.  She continued that line of questioning at length without objection before defense counsel moved for a mistrial.

During a bench conference, defense counsel argued that defendant had no obligation to tell anyone anything, and that the prosecutor's questions violated defendant's Fifth Amendment right to remain silent.  The prosecutor responded that there were no grounds for a mistrial, as she had the right to cross-examine defendant on what he did not say in his statement.  Defense counsel also argued that the prosecutor should not be able to continue referencing the suppression hearing during her questioning, because defendant was not asked at that hearing about what happened that night.  The prosecutor said she would move on.  After the bench conference ended, the trial judge said it was time to take a break.  The record reflects that the trial judge did not rule on the motion for a mistrial, and we consider that the motion was denied.  See State v. Johnson, 05-180 (La.App. 5 Cir. 11/29/05), 917 So.2d 576, 583, writ denied, 2006-1254 (La. 12/15/06), 944 So.2d 1282

Defendant did not timely object when the prosecutor began questioning defendant regarding why he failed to tell anyone he saw someone standing near the victim's body after the shooting. In order to preserve an issue for appellate review, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. LSA-C.Cr.P. art. 841. See, State v. Johnson, 03-620 (La.App. 5 Cir. 10/28/03), 860 So.2d 180, 187, writ denied, 03-3171 (La. 3/19/04), 869 So.2d 849. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem, and to prevent the defendant from gambling on a favorable verdict, then resorting to appeal on errors that might easily have been corrected by an objection. Id. Therefore, we find that defendant is precluded from raising this issue on appeal, considering that he failed to object when the comments in question were first made.

Defendant's forth motion for mistrial occurred when Lt. Thurman testified on rebuttal that defendant and his mother were allowed to speak while defendant was seated in the back seat of the police car on Elm Street during the time the detectives were attempting to locate the murder weapon. Lt. Thurman further testified that he overheard defendant tell his mother "that he was sorry." Defense counsel moved for a mistrial, noting that the state had never given him that information. Defense counsel argued that that statement was tantamount to a confession, but the prosecutor disagreed.

The prosecutor pointed out that Det. Meunier had already testified at trial that defendant told his mother he was sorry, that defense counsel objected, and that the trial judge had told the prosecutor to move on. The trial judge took a recess. When he returned, he said that the court had "thoroughly researched the matter" and was going to deny the motion. However, the trial judge allowed defense counsel to rebut the testimony. The prosecutor stated she had no further questions of the witness, and defense counsel then cross-examined him.

The record shows that defendant did not timely object when the prosecutor first asked Det. Meunier whether defendant had issued apologies and to whom. Additionally, the basis for defendant's objection was hearsay, and not a discovery violation. He raises this issue for the first time on appeal. Defendant is limited on appeal to the grounds articulated at trial. A new basis, even if meritorious, cannot be raised for the first time on appeal. State v. Gaal, 01-376

(La.App. 5 Cir. 10/17/01), 800 So.2d 938, 950, writ denied, 02-2335 (La. 10/3/03), 855 So.2d 294.

In addition, we find that the admission of the statement, if erroneous, was harmless, and therefore did not constitute reversible error.  State v. Nguyen, 05-569 (La. 5 Cir. 2/3/06), 924 So.2d 258, 265.

Defendant's argument is that the cumulative effect of these "improper" statements and testimony was to undermine his ability to receive a fair trial.  We find that the complained of statements, taken alone or together, did not so prejudice defendant that he was denied a fair trial.  Therefore, defendant's allegation of error is without merit.[15]

In his federal *habeas* application, petitioner cites only state law provisions governing mistrials.  To the extent that he is simply arguing that the state courts misapplied those provisions, this Court cannot grant relief on that basis.  "[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Charles v. Thaler, 629 F.3d 494, 500-01 (5th Cir. 2011) ("Under § 2254, federal habeas courts sit to review state court misapplications of federal law.  A federal court lacks authority to rule that a state court incorrectly interpreted its own law.  When, as here, a state court's legal conclusions are affirmed by the highest court in that state, those conclusions *are* state law."); Molo v. Johnson, 207 F.3d 773, 776 n.9 (5th Cir. 2000) ("Federal *habeas* review does not extend to state court conclusions of state law."); Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal *habeas*).  Simply put, a federal *habeas* court does "not sit as a 'super' state supreme court" to review alleged errors of state law.  Smith v. McCotter, 786 F.2d 697, 700 (5th Cir. 1986); see also Dickerson v. Guste, 932 F.2d 1142, 1145 (5th

---

[15] Jackson, 963 So.2d 432 at 439-42; State Rec., Vol. III of XIII.

Cir. 1991).  Rather, federal *habeas corpus* relief may be granted "only on the ground that [the

petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28

U.S.C. § 2254(a).  Accordingly, mere violations of state law will not suffice.  See Engle v. Isaac,

456 U.S. 107, 119 (1983).

To the extent that petitioner is in fact claiming that the comments violated his federal

constitutional right to a fair trial, the claim fares no better.  As the United States Fifth Circuit Court

of Appeals has explained:

> Even if ... [a] prosecutor's remarks [are] improper,
> prosecutorial remarks are a sufficient ground for habeas relief only
> if they are so prejudicial that they render the trial fundamentally
> unfair.  Such unfairness exists only if the prosecutor's remarks evince
> either persistent and pronounced misconduct or the evidence was so
> insubstantial that (in probability) but for the remarks no conviction
> would have occurred.

Harris v. Cockrell, 313 F.3d 238, 245 (5th Cir. 2002) (internal quotation marks, ellipsis, and footnote

omitted); see also Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1989).  In other words, a prosecutor's

remarks warrant *habeas* relief only if they were "a crucial, critical, highly significant factor upon

which the jury based its verdict."  Harris, 313 F.3d at 245.

In the instant case, even if all of the comments at issue were improper, a proposition

which is doubtful at best, they could hardly be categorized as egregious, and there is no evidence

that they were made in bad faith in a deliberate attempt to taint the proceedings or prejudice the jury.

Further, and most importantly, when the comments are considered in context, it simply cannot be

reasonably said that they played a significant factor in the jury's verdict, especially considering the

court's admonishments, the jury instructions, and the evidence of guilt admitted at trial.  Therefore, this claim should be rejected.

### C.  Failure to Provide Notification of Post-Conviction Deadlines

Petitioner next claims that his rights were violated when the trial court failed to advise him of the prescriptive period for seeking state post-conviction relief as required by La.C.Cr.P. art. 930.8(C).  This claim fails for two reasons.  First, the trial court's failure to comply with article 930.8(C) was, at most, a violation of state law and, as such, cannot serve as a basis for federal relief pursuant to § 2254.  Harper v. Hubert, Civ. Action No. 06-10556, 2008 WL 4534097, at *3 (E.D. La. Oct. 7, 2008).  As previously explained, mere violations of state law simply do not warrant federal *habeas corpus* relief; rather, such relief may be granted only to remedy violations of federal law.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).  Second, in any event, the trial court's error was noted and corrected by the Louisiana Fifth Circuit Court of Appeal on direct appeal.[16]  Because the error about which petitioner complains was corrected in a timely fashion by the state courts, the error was harmless.  Harper, 2008 WL 4534097, at *3.

### D.  Coerced Confession

Petitioner next claims that his confession was involuntary and should have been suppressed.  However, for the following reasons, this claim is procedurally barred.[17]

---

[16] Jackson, 963 So.2d at 442-43; State Rec., Vol. III of XIII.

[17] The state has filed only a partial response in this matter, indicating that a supplemental response would be filed if the Court were to reject the argument that petitioner's federal application should be dismissed for the failure to exhaust his state court remedies.  The Court declines to allow that piecemeal procedure in this case, in that, for the reasons set forth in this opinion, it is apparent that no supplemental response is necessary because petitioner clearly is not entitled to relief.  However, because the state failed to respond to this claim, it has not expressly raised the procedural

The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

When petitioner asserted this claim in the state post-conviction proceedings, the state district court rejected the claim, holding:

> As the state surmises in its response, this issue was already heard in pre-trial motions, argued at trial, and was not raised on appeal. If an application alleges a claim that was raised at trial, but was inexcusably not pursued on appeal, the court may deny relief. LSA-C.Cr.P. art. 930.4(C). The petitioner's claim is barred because it could have been, but was not, raised on appeal. Under La.C.Cr.P. art. 930.4, such claims should be denied.[18]

_____

default. Nevertheless, a federal *habeas* court has the discretion to raise a procedural default *sua sponte*. Prieto v. Quarterman, 456 F.3d 511, 518 (5th Cir. 2006); Magouirk v. Phillips, 144 F.3d 348, 357-58 (5th Cir. 1998). Accordingly, petitioner is hereby specifically instructed that this Report and Recommendation is notice to him that this Court is *sua sponte* raising the procedural bar. See Prieto, 456 F.3d at 519; Magouirk, 144 F.3d at 359.

[18] State Rec., Vol. VI of XIII, Order dated March 20, 2009.

The Louisiana Fifth Circuit Court of Appeal likewise rejected petitioner's claim pursuant to article 930.4,[19] and the Louisiana Supreme Court denied relief without assigning additional reasons.[20]

It is well-established that La. Code Crim. P. art. 930.4(C) is an independent and adequate state court ground sufficient to procedurally bar claims from federal *habeas* review. See, e.g., Brown v. Cain, Civ. Action No. 11-2267, 2011 WL 7042222, at *8 (E.D. La. Dec. 20, 2011), adopted, 2012 WL 123288 (E.D. La. Jan. 17, 2012); Thomas v. Cain, Civ. Action No. 11-2408, 2011 WL 6046536, at *5 (E.D. La. Nov. 17, 2011), adopted, 2011 WL 6028779 (E.D. La. Dec. 5, 2011); Young v. Travis, Civ. Action No. 07-3542, 2011 WL 494811, at *8 (E.D. La. Jan. 13, 2011), adopted, 2011 WL 494802 (E.D. La. Feb. 4, 2011); Jones v. Cain, Civ. Action No. 10-0187, 2010 WL 3312592, at *5-6 (E.D. La. July 29, 2010), adopted, 2010 WL 3312594 (E.D. La. Aug. 19, 2010); Green v. Cooper, Civ. Action No. 06-1657, 2009 WL 87590, at *10 (E.D. La. Jan. 8, 2009).

When, as here, the state courts have rejected a petitioner's claims based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner demonstrates neither.

---

[19] State *ex rel.* Jackson v. State, No. 09-WR-582, at pp. 2-3 (La. App. 5th Cir. Apr. 16, 2010); State Rec., Vol. VII of XIII.

[20] State *ex rel.* Jackson v. State, 63 So.3d 975 (La. 2011) (No. 2010-KH-1175); State Rec., Vol. XIII of XIII. Although the Louisiana Supreme Court did not assign reasons in denying petitioner's subsequent writ application, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground." Finley, 243 F.3d at 218.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. See Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).

Here, petitioner argues that this claim was not asserted on appeal because his appellate counsel was ineffective. However, as explained in detail *infra*, petitioner's ineffective assistance of counsel claim has no merit. It is clear that a meritless ineffective assistance of counsel claim cannot serve as cause for a procedural default. Sherill v. Hargett, 184 F.3d 1172, 1176 (10th Cir. 1999); Turner v. Compoy, No. 91-55842, 1993 WL 425372, at *3 n.2 (9th Cir. Oct. 19, 1993); Arita v. Cain, Civ. Action No. 11-636, 2011 WL 4738666, at *11 (E.D. La. Aug. 25, 2011), adopted, 2011 WL 4738658 (E.D. La. Oct. 6, 2011), aff'd, 500 Fed. App'x 352 (5th Cir. 2012), cert. denied, 2013 WL 664688 (U.S. Apr. 15, 2013); Bridges v. United States, No. 04 Civ. 2715, 2005 WL 1798084, at *2 (S.D.N.Y. Aug. 1, 2005); Davie v. Mitchell, 324 F. Supp. 2d 862, 872 (N.D. Ohio 2004); McLaughlin v. Carroll, 270 F. Supp. 2d 490, 516 (D. Del.2003). Therefore, the undersigned finds that petitioner has failed to establish cause for the default of his claim, and, "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Because petitioner has not met the "cause and prejudice" test, this Court need consider this claim only if the application of the procedural bar would result in a "fundamental

miscarriage of justice."   However, in order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."   Finley, 243 F.3d at 220 (citations omitted). Petitioner has made not made that showing, and, therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

For these reasons, petitioner's claim that his confession should have been suppressed is procedurally barred in this federal proceeding.

### E.  Ineffective Assistance of Counsel

Lastly, petitioner claims that he received ineffective assistance of counsel on appeal. The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel which requires that a petitioner seeking relief demonstrate both that counsel's performance was deficient *and* that the deficient performance resulted in actual prejudice. Strickland v. Washington, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth

Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the Strickland test, a petitioner claiming that his appellate counsel was ineffective must show a reasonable probability that he would have prevailed on appeal but for counsel's deficient representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error.  Briseno, 274 F.3d at 210.

Petitioner's ineffective assistance of counsel claim was denied by the state courts in the state post-conviction proceedings.  The state district court rejected the claim, holding:

> The petitioner next argues that he received ineffective assistance of appellate counsel by counsel's failure to raise a claim on direct appeal.  His factual contention is that that appellate counsel

– 28 –

was ineffective in not raising the claim that the trial court erred in denying petitioner's motion to suppress his involuntary confession.

It is clear that the petitioner has a Sixth Amendment right to effective legal counsel.  Under the well known standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and State v. Washington, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent of a change of outcome.  State v. Legrand, 2002-1462 (La. 12/3/3), 864 So.2d 89.

Actual ineffectiveness claims alleging a deficiency in attorney's performance are subject to the general requirement that the defendant affirmatively prove prejudice.  U.S.C.A. Const. Amend. 6.  A convicted defendant making a claim of ineffective assistance must identify acts or omissions of counsel that are alleged not to have been result of reasonable professional judgment and, then, the court must determine whether, in light of all circumstances, identified acts or omissions were outside wide range of professional competent assistance; in making that determination, the court should keep in mind that counsel's function is to make adversarial testing work in the particular case.  U.S.C.A. Const. Amend. 6.

Petitioner fails to meet the bar established in Strickland.  There is a strong presumption that counsel's performance is within the wide range of effective representation.  Effective counsel does not mean errorless counsel, and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance.  State v. Solar, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

The court specifically finds that the petitioner has not met his burden of proof that appellate counsel rendered substandard performance.  To the contrary, the court finds that counsel's performance was constitutionally sufficient.  The petitioner fails to prove prejudice.  As the state surmises in its response, the record shows that the petitioner would not have succeeded on appeal if this claim had been included.  The petitioner has not established that he would have prevailed on appeal, but for counsel's specific performance.  In sum, petitioner has not established that his appellate

attorney's performance was constitutionally deficient or that he was prejudiced as a result.[21]

The Louisiana Fifth Circuit Court of Appeal likewise rejected petitioner's claim, holding:

> [R]elator argues that appellate counsel failed to raise the claim of involuntary confession on appeal.  However, relator is not entitled to designate issues counsel shall raise on appeal.  Jones v. Barnes, 463 U.S. 745, 751-53, 103 S.Ct. 3038, 3312-13, 77 L.Ed.2d 987 (1983) (indigent defendants do not have a constitutional right to require appointed appellate counsel to argue all non-frivolous issues should counsel in the exercise of his own professional judgment decline to pursue them).  In any event, relator testified on his own behalf at trial and denied shooting the victim.  Additionally, relator testified that his confession resulted from the detectives' threats.  According to relator, the officers coerced him to say that he accidentally shot the victim.  Relator also claimed that the officers beat him.  On the other hand, the investigating officers were called by the state as rebuttal witnesses and denied relator's allegations of coercion.  Given that relator's claim of an involuntary confession was presented to the jury, who ultimately rejected his testimony by finding relator guilty as charged, relator fails to show appellate counsel erred by omitting this claim from review on appeal.  Based on our current analysis, we conclude there was no error in the district court's March 20, 2009 ruling on relator's application for post-conviction relief.[22]

The Louisiana Supreme Court also denied relief without assigning additional reasons.[23]

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal

---

[21] State Rec., Vol. VI of XIII, Order dated March 20, 2009.

[22] State ex rel. Jackson v. State, No. 09-WR-582, at p. 3 (La. App. 5th Cir. Apr. 16, 2010); State Rec., Vol. VII of XIII.

[23] State ex rel. Jackson v. State, 63 So.3d 975 (La. 2011) (No. 2010-KH-1175); State Rec., Vol. XIII of XIII.

law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); <u>Moore v.</u>

<u>Cockrell</u>, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court recently

explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel

claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application
> of the <u>Strickland</u> standard was unreasonable.  This is different from
> asking whether defense counsel's performance fell below
> <u>Strickland</u>'s standard.  Were that the inquiry, the analysis would be
> no different than if, for example, this Court were adjudicating a
> <u>Strickland</u> claim on direct review of a criminal conviction in a United
> States district court.  Under AEDPA, though, it is a necessary
> premise that the two questions are different.  For purposes of §
> 2254(d)(1), an *unreasonable* application of federal law is different
> from an *incorrect* application of federal law.  A state court must be
> granted a deference and latitude that are not in operation when the
> case involves review under the <u>Strickland</u> standard itself.
>
> A state court's determination that a claim lacks merit
> precludes federal habeas relief so long as fairminded jurists could
> disagree on the correctness of the state court's decision.  <u>Yarborough</u>
> <u>v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938
> (2004).  And as this Court has explained, "[E]valuating whether a
> rule application was unreasonable requires considering the rule's
> specificity.  The more general the rule, the more leeway courts have
> in reaching outcomes in case-by-case determinations."  <u>Ibid</u>.  "[I]t is
> not an unreasonable application of clearly established Federal law for
> a state court to decline to apply a specific legal rule that has not been
> squarely established by this Court."  <u>Knowles v. Mirzayance</u>, 556
> U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009)
> (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 131 S.Ct. 770, 785-86 (2011) (citation omitted).  The Supreme Court then

explained:

> Surmounting <u>Strickland</u>'s high bar is never an easy task.  An
> ineffective-assistance claim can function as a way to escape rules of
> waiver and forfeiture and raise issues not presented at trial, and so the
> <u>Strickland</u> standard must be applied with scrupulous care, lest

intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 788 (citations omitted; emphasis added). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

Even if a claim challenging admissibility of the confession would not have been frivolous, appellate counsel simply "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." <u>West v. Johnson</u>, 92 F.3d 1385, 1396 (5th Cir. 1996). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983). Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises

– 32 –

every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." Id. at 753.

Rather, the applicable test is whether the ignored issue was "clearly stronger" than the issues actually presented on appeal. See, e.g., Diaz v. Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007); see also Smith v. Robbins, 528 U.S. 259, 288 (2000).  On appeal, counsel challenged petitioner's conviction on the grounds that the trial court abused its discretion in refusing to keep the hearing on the motion to suppress open for additional testimony and that the prosecutor's improper comments, when considered together, undermined petitioner's ability to receive a fair trial. Granted, for the reasons previously discussed, those were not strong issues.  Nevertheless, this Court simply cannot say that an issue challenging the admissibility of the confession would have been, as required, "clearly stronger."  Petitioner's contention that he was coerced into confessing was entirely uncorroborated, was vigorously denied by the officers involved, and was flatly rejected by both the trial judge at the suppression hearing and by the jury at trial.  In summary, while the issues raised on appeal were weak ones, this issue would have been equally weak.  This Court therefore cannot say that there is a reasonable probability that petitioner would have prevailed on appeal if only this claim had been raised.

Accordingly, under the "doubly deferential" standards of review mandated by the AEDPA, it is evident that petitioner has not shown that the state court's decision rejecting his ineffective assistance of appellate counsel claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States." 28 U.S.C. § 2254(d)(1).  As a result, this Court should defer to that ruling and likewise deny the claim.

## <u>RECOMMENDATION</u>

Accordingly, **IT IS RECOMMENDED** that the petition of **Tyrone A. Jackson** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[24]

New Orleans, Louisiana, this seventh day of May, 2013.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[24] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.